# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Corval Constructors, Inc., | File No. 19-cv-01277 (ECT/BRT) |
| Plaintiff, | |
| v. | |
| | **OPINION AND ORDER** |
| Tesoro Refining & Marketing Company, LLC, | |
| Defendant. | |

Ernest F. Peake, Paul M. Shapiro, James M. Jorissen, Patrick J. Lindmark, and Stacey L. Drentlaw, Briggs and Morgan, P.A., Minneapolis, MN, for Plaintiff Corval Constructors, Inc.

Shawn M. Raiter, John A. Markert, and Monica Detert, Larson King, LLP, St. Paul, MN for Defendant Tesoro Refining & Marketing Company, LLC.

Plaintiff Corval Constructors, a Minnesota-based engineering and construction firm, contracted to provide services at a North Dakota oil refinery owned and operated by Defendant Tesoro Refining and Marketing Company. In this case, Corval asserts claims for breach of contract, declaratory judgment, promissory estoppel, and fraud, all stemming from the deterioration of its commercial relationship with Tesoro at the North Dakota refinery. Pursuant to 28 U.S.C. § 1404(a), Tesoro has moved to transfer the case to the United States District Court for the District of North Dakota. Should that motion be denied, Tesoro has moved to dismiss Corval's claims for a declaratory judgment, promissory estoppel, and fraud pursuant to Federal Rule of Civil Procedure 12(b)(6). Tesoro's transfer motion will be denied because Corval's choice of forum is given presumptive weight and

the factors considered under § 1404(a) have not been shown to favor transfer. Tesoro's Rule 12(b)(6) motion to dismiss Corval's declaratory-judgment, promissory-estoppel, and fraud claims will be denied because Corval properly pleads these claims.

I[1]

Corval and Tesoro have diverse citizenship and that, combined with Corval's demands for "damages in excess of $75,000," Am. Compl. at 26, ¶¶ 1, 3–4, and 5 [ECF No. 11], means there is subject-matter jurisdiction over this case. 28 U.S.C. § 1332(a). Corval is incorporated under Minnesota law, *see* Notice of Removal ¶ 6 [ECF No. 1],[2] and maintains its principal place of business in St. Paul, Am. Compl. ¶ 1. Tesoro is a Delaware limited liability company. Notice of Removal ¶ 7. Tesoro's sole member is Western Refining Southwest, Inc., an Arizona corporation with its principal place of business in Findlay, Ohio. *Id.* Tesoro owns and operates the Mandan Refinery in Mandan, North Dakota. Am. Compl. ¶ 2.

---

[1]    In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), including for failure to plead fraud with particularity under Rule 9(b), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party. *Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 792 (8th Cir. 2014) (addressing Rule 12(b)(6)) (citation omitted); *United States ex rel. Strubbe v. Crawford Cty. Mem'l Hosp.*, 915 F.3d 1158, 1162–63 (8th Cir. 2019) (citation omitted) (addressing Rule 9(b)). Therefore, the background facts described in Part I of this Opinion and Order are taken from Corval's amended complaint.

[2]    Corval does not allege its state of incorporation in its pleadings, though it does not seem to dispute the allegation in Tesoro's notice of removal that Corval is incorporated under Minnesota law. Regardless, the absence of this averment in Corval's pleadings prompted pursuit of confirmation of this fact from records that are publicly available. Office of the Minnesota Secretary of State, Corval Constructors, Inc. Business Record Details, https://mblsportal.sos.state.mn.us/Business/SearchDetails?filingGuid=575d21f8-b0d4-e011-a886-001ec94ffe7f (last visited October 11, 2019).

Tesoro and Corval entered into a Master Services Agreement ("MSA") in February 2013 and a Supplemental Agreement ("SA") in February 2018 (collectively, the "Agreements"). *Id.* ¶¶ 11, 18; MSA [ECF No. 19]; SA [ECF No. 36]. Pursuant to the Agreements, Tesoro would issue purchase orders, service orders, and work orders describing the work to be performed by Corval at the refinery and the price to be paid by Tesoro. Am. Compl. ¶ 15. The Agreements provided that, upon written notice by Tesoro and request by Corval, Tesoro could change any previously-issued order. MSA ¶ 3.3. Corval's requests were referred to as "Field Change Requests," and Tesoro's changes to previously-issued orders were called "Field Change Orders." *Id.* ¶ 2.0. A Field Change Order would amend the original order to account for the changed work request and changed costs. *Id.* ¶ 3.3.

From 2013 to early 2018, Corval and Tesoro worked together in apparent harmony. Tesoro would issue orders, Corval would perform the work, and Tesoro would pay Corval the agreed amount. Am. Compl. ¶¶ 16–17. During this period, Tesoro "routinely approved and paid for change order requests issued by Corval before and after Corval performed work." *Id.* ¶ 17. "Tesoro also routinely paid for work it orally requested Corval provide." *Id.* Beginning in January 2018, however, the relationship began to deteriorate. Throughout that year, and in relation to seventeen different projects, Tesoro either failed to pay Corval at all or withheld some portion of the payments due. *See generally id.* ¶¶ 19–145. Despite this, Corval continued working at Tesoro's refineries, including the Mandan Refinery, into 2019. *Id.* ¶ 146.

Corval alleges that on or around January 16, 2019, Tesoro decided internally to stop paying or processing all Corval invoices for labor and materials provided at Tesoro's request. *Id.* ¶ 146. Tesoro did not communicate this decision to Corval. *Id.* Even after this internal decision, Tesoro continued to make statements "encouraging Corval to continue working at various refinery locations in accordance with earlier issued Purchase Orders knowing it would never pay Corval for the work provided." *Id.* ¶ 147. As a result of Tesoro's encouragement, Corval continued working at the Mandan Refinery from January to March 2019. *Id.* ¶¶ 149–150. When Corval learned of Tesoro's decision not to pay for work performed by Corval, Corval demanded payment. *Id.* ¶ 151. Tesoro did not pay, and instead "retaliated by suspending Corval from completing future work on all of its projects within the Mandan Refinery." *Id.* ¶ 152. This suspension caused delays to the projects on which Corval was working. *Id.* ¶ 153. Corval again demanded payment for the work it had performed, and Tesoro terminated Corval from working on all Mandan Refinery projects. *Id.* ¶ 155.

## II

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a). "Section 1404(a) reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Despite this desire, "[c]hange of venue, although within the discretion of the district court, should not be freely granted." *In re Nine Mile Ltd.*, 692 F.2d 56, 61 (8th Cir.

1982) (per curiam), *abrogated on other grounds by Mo. Hous. Dev. Comm'n v. Brice*, 919 F.2d 1306 (8th Cir. 1990). "Fairly summarized, in a motion to transfer under 28 U.S.C. § 1404, precedent requires this Court to defer to the Plaintiffs' choice of Minnesota unless the factors . . . strongly weigh in favor of transfer . . . but the weight to be afforded the Plaintiffs' choice is not insurmountable[.]" *Brockman v. Sun Valley Resorts, Inc.*, 923 F. Supp. 1176, 1179 (D. Minn. 1996); *see also Promove, Inc. v. Siepman*, 355 F. Supp. 3d 816, 824 (D. Minn. 2019) (recognizing that the "federal courts give considerable deference to a plaintiff's choice of forum" (quotation omitted)). "To prevail on a motion to transfer, the movant must show that his inconvenience substantially outweighs the inconvenience that plaintiff would suffer if venue were transferred." *Nelson v. Soo Line R.R. Co.*, 58 F. Supp. 2d 1023, 1026 (D. Minn. 1999).[3]

"The statutory language reveals three general categories of factors that courts must consider when deciding a motion to transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). A court's evaluation of a motion to

---

[3]     The Parties do not dispute that this case "might have been brought" in the District of North Dakota. 28 U.S.C. § 1404(a). This makes sense. Neither Corval nor Tesoro suggests that specific personal jurisdiction would be lacking over either of them in the District of North Dakota. And regarding venue, a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]" 28 U.S.C. § 1391(b)(2). Here, a substantial part of the events giving rise to Corval's claims occurred in North Dakota: Corval and Tesoro contracted for Corval to perform work at the Mandan Refinery; Corval did, in fact, perform work at the Mandan Refinery; Tesoro's alleged failure to pay Corval relates to work performed at that refinery; and Tesoro's alleged decision to stop paying Corval related to work to be performed at the Mandan Refinery. Am. Compl. ¶¶ 15, 19–145, 169.

transfer is not limited to these three factors, and "require[s] a case-by-case evaluation of the particular circumstances at hand[.]" *Id.* When balancing the convenience of the parties and witnesses, courts often consider "the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, . . . the accessibility to records and documents, . . . the location where the conduct complained of occurred, and . . . the applicability of each forum state's substantive law." *Id.* at 696. In evaluating the interests of justice, courts traditionally weigh a variety of factors, including "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law." *Id.*

The convenience of the parties does not favor transfer. Corval's ties to Minnesota make Minnesota a very (if not the most) convenient forum for Corval. Apart from maintaining a registered address and agent in Minnesota, it is true that Tesoro has no ties to Minnesota. But, as a Delaware limited liability company whose sole member is an Arizona corporation with a principal place of business in Ohio, Tesoro would be a foreign litigant in North Dakota just as it is in Minnesota. It also is true that the work that is the subject of this suit occurred at the Mandan Refinery in North Dakota. However, other important parts of the case—business decisions and communications, for example—almost certainly occurred or originated in other places. It has not been shown, therefore, that North Dakota would provide substantially greater convenience even to Tesoro or that the

convenience a North Dakota forum might afford Tesoro substantially outweighs the convenience of a Minnesota forum to Corval.

The convenience of the witnesses has not been shown to favor transfer. Tesoro identifies 39 potential witnesses, Aff. of John A. Markert, Exs. 1–7 [ECF No. 27], and asserts that "there can be no real dispute that the vast majority of witnesses with first-hand knowledge of the work Corval performed live and reside in North Dakota," Mem. in Supp. of Transfer at 6 [ECF No. 25]. However, Tesoro does not differentiate witnesses who are more (or less) important to its defense, and it appears that many of the listed witnesses are cumulative. No doubt North Dakota likely would be a more convenient venue for the "majority of [Tesoro's] witnesses with first-hand knowledge of the work Corval performed[.]" *Id.* This does not account for witnesses who might testify for Tesoro regarding other subjects. Nor does this account for Corval's potential witnesses, and Corval asserts that those witnesses are almost all from Minnesota. Mem. in Opp'n to Transfer at 14 [ECF No. 29]. Here, just as in another case from this District addressing a § 1404(a) transfer motion, it may be said that "[t]he sheer number of witnesses offered by Defendants will not decide which way the convenience factor tips. Furthermore, because most of the above-mentioned [North Dakota] witnesses are Defendant's employees, the Court can assume that they will appear voluntarily in a foreign forum." *Luckey v. Alside, Inc.*, Civil No. 15-2512 (JRT/JSM), 2016 WL 1559569 at *5 (D. Minn. Apr. 18, 2016) (citation and internal quotation marks omitted). "Aside from costs associated with bringing employee–witnesses to the District of Minnesota for hearings and trial, it is unclear what extra costs Defendants would incur. Depositions of those witnesses, for example, would

likely take place in [North Dakota]." *Id.*; *see also* Mem. in Opp'n to Transfer at 17 ("Corval, consistent with common practice, is willing to depose essential witnesses in Bismarck[.]"). Were the case to be transferred to the District of North Dakota, the "hardship of having to travel to the District of Minnesota" Tesoro asserts, Mem. in Supp. of Transfer at 7, would be transformed into a hardship for Corval to bear.

Tesoro identifies two additional factors it says warrant transfer, but neither does. First, Tesoro argues that transfer would "allow for ease of access to the project records by the litigants, as all of the work was performed at the Mandan, North Dakota site." *Id.* The location of documents does not favor transfer because, as Corval points out, much of this evidence likely is stored and may be transmitted electronically. *See* Mem. in Opp'n to Transfer at 19. Nothing in the record suggests this is one of those (increasingly rare) cases in which a significant number of original paper documents are central to the claims or subject to discovery. *See Luckey*, 2016 WL 1559569 at *5 (recognizing that the ability to transmit evidence electronically "render[s] its physical location immaterial" and the presence of some original paper documents or evidence in the putative transferee forum "is insufficient to overcome the deference given to [the plaintiff's] choice of forum"). Second, Tesoro argues that "this case will likely involve experts for both sides who will need to visit the project site to fully analyze the issues with Corval's work." Mem. in Supp. of Transfer at 6. Accepting that experts may need to visit the Mandan Refinery says little about inconvenience to the Parties given the relative independence with which experts usually operate. The experts have not been identified, so we do not know how far they might be required to travel. Depending on where they reside, Minnesota may prove to be

a more convenient forum for experts. If meaningfully greater convenience to Tesoro or Corval may result from transferring venue to North Dakota because that is where expert observation and analysis are likely to occur, it has not been identified.

The interests of justice do not favor transfer. There is no suggestion that judicial economy, the ability to enforce a judgment, or obstacles to a fair trial in Minnesota warrant transfer. In light of the inconvenience factors discussed above, it cannot be said that Minnesota will be a comparatively and sufficiently more expensive venue in which to litigate this case than North Dakota. The law to be applied in this case does not justify a North Dakota forum. The MSA has a Texas choice-of-law provision. *See generally* Mem. in Supp. of Dismissal at 4–5; Mem. in Opp'n to Dismissal. As a general rule, such provisions are enforced in Minnesota and North Dakota. *See Milliken & Co. v. Eagle Packaging Co.*, 295 N.W.2d 377, 380 n.1 (Minn. 1980) ("This court is committed to the rule that parties may agree that the law of another state shall govern their agreement and will interpret and apply the law of another state where such an agreement is made." (internal quotation marks omitted)); *Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1392 (8th Cir. 1997) ("Minnesota generally recognizes choice of law clauses." (citing *Hagstrom v. Am. Circuit Breaker Corp.*, 518 N.W.2d 46, 48 (Minn. Ct. App. 1994))); *Candee v. Candee*, 903 N.W.2d 514 (N.D. 2017) (applying California law pursuant to a choice-of-law provision in a settlement agreement); *Chapman v. Hiland Partners GP Holdings, LLC*, 862 F.3d 1103, 1108 (8th Cir. 2017) ("North Dakota courts generally honor choice-of-law provisions."). To the extent Texas law applies, then, there is no reason to think a federal court in North Dakota would be better able to accomplish

that task than a federal court in Minnesota. In either situation, a court would interpret and apply foreign law. To the extent Texas law might not apply, no difference in state law is identified that might lead to different treatment of the case in North Dakota versus Minnesota.

## III

Tesoro moves to dismiss Corval's claims for a declaratory judgment, promissory estoppel, and fraud under Rule 12(b)(6). In resolving these questions, the amended complaint's factual allegations and reasonable inferences from those allegations must be accepted as true. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014). The amended complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The factual allegations in the amended complaint need not be detailed but must "raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not suffice to withstand a Rule 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "As this action is in federal court based on diversity of citizenship, state law governs substantive law issues." *Paine v. Jefferson Nat'l Life Ins. Co.*, 594 F.3d 989, 992 (8th Cir. 2010); *see also Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). Of course, "general choice of law provisions, as expressed in contracts, incorporate only substantive law, and do not displace the procedural law of the forum state." *Fredin v. Sharp*, 176 F.R.D. 304, 308 (D. Minn. 1997).

A

Corval seeks a declaratory judgment pursuant to 28 U.S.C. § 2201, and it styles the request for a declaratory judgment as a count in the amended complaint, Am. Compl. ¶¶ 164–167 (Count II), in addition to requesting the remedy in its prayer for relief, *id.* at 26 ¶ 2. Tesoro has moved to dismiss the count because, it contends, a declaratory judgment is not a cause of action. *See* Mem. in Supp. of Dismissal at 5–6. Tesoro does not object to Corval's request for a declaratory judgment as part of its prayer for relief. Even if granted then, this aspect of Tesoro's motion would have no bearing on the case.

It is true that courts in this district often have said: "A declaratory judgment is a remedy, not a cause of action." *Wolff v. Bank of N.Y. Mellon*, 997 F. Supp. 2d 964, 979 (D. Minn. 2014). *See also Bredlow v. CitiMortgage, Inc.*, Civ. No. 15-3087 (DWF/JJK), 2016 WL 310728 at *8 (D. Minn. Jan. 26, 2016); *Finnegan v. Suntrust Mortg.*, 140 F. Supp. 3d 819, 842 (D. Minn. 2015). This makes sense; the statute authorizing parties to seek a declaratory judgment is titled "Creation of remedy." 28 U.S.C. § 2201. Therefore, dismissal of a claim or request for a declaratory judgment is proper when there is no legal basis underlying the claim or request. *See Wolff*, 997 F. Supp. 2d at 979 ("Plaintiffs' claim for declaratory judgment must be dismissed because there is no legal basis for affording the remedy."); *Bredlow*, 2016 WL 310728 at *8 ("[T]he Amended Complaint fail[ed] to state a substantive claim" and therefore "there [was] no legal basis for a declaratory judgment."). This does not mean it is improper for a litigant to request a declaratory judgment in a "count" of its complaint, or that the law permits a litigant to request a declaratory judgment only in a "prayer for relief." The plain text of the Declaratory

Judgments Act is not so precise. It says only that a declaratory judgment may be issued "[i]n a case of actual controversy within its jurisdiction" and "upon the filing of *an appropriate pleading* . . . whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added).

Here, Corval asserts breach-of-contract claims that Tesoro does not challenge at this time and that provide a legal basis for its declaratory-judgment request. Am. Compl. ¶¶ 157–163; 177–187. No legal justification has been identified forbidding Corval from requesting a declaratory judgment in a "count" of its Amended Complaint. This request seems to fit the "appropriate pleading" requirement of § 2201(a). Were there a legal justification to dismiss that count, it would make no practical difference here because Corval makes the same request in its prayer for relief, and, as noted, Tesoro does not object to that. Fed. R. Civ. P. 1. Therefore, Tesoro's motion to dismiss Corval's declaratory judgment claim will be denied.

B

Tesoro seeks dismissal of Corval's promissory-estoppel claim. Tesoro argues essentially that Corval's claim concerns promises covered already by the Parties' contracts and that a promissory-estoppel claim cannot plausibly be pleaded when the promises that are the subject of the claim are covered by a contract or contracts. Corval says that its claim for promissory estoppel refers to promises outside of the Parties' contracts. Corval also might say that its claim refers to promises to the extent they are determined ultimately to be outside the Parties' contracts. Either way, the law allows Corval to assert this claim as pleaded.

The Parties seem to disagree about what law governs Corval's promissory-estoppel claim. Tesoro relies on Texas precedent. Mem. in Supp. of Dismissal at 9–10. Corval cites cases applying Minnesota law. Mem. in Opp'n of Dismissal at 10–13. This dispute is immaterial because, at least for purposes of Tesoro's Rule 12(b)(6) motion with respect to this claim, Texas and Minnesota law are functionally equivalent. In Texas, promissory estoppel "is an available cause of action to a promisee who relied to his detriment on an otherwise unenforceable promise." *Frost Crushed Stone Co. v. Odell Geer Const. Co.*, 110 S.W.3d 41, 44 (Tex. App. 2002) (citing *Wheeler v. White*, 398 S.W.2d 93, 96–97 (Tex. 1965)). "The requisites of promissory estoppel in Texas are: (1) a promise; (2) foreseeability of reliance thereon by the promisor; and (3) substantial reliance by the promisee to his detriment." *Id.* Promissory estoppel is "not applicable to a promise covered by a valid contract between the parties." *Trevino & Assocs. Mech., L.P. v. Frost Nat'l Bank*, 400 S.W.3d 139, 143 (Tex. App. 2013). Promissory estoppel in Texas "presumes no contract exists" covering the promise sought to be enforced. *Subaru of America, Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 226 (Tex. 2002). In Minnesota, "[a] claim for promissory estoppel has three elements: (1) Was there a clear and definite promise? (2) Did the promisor intend to induce reliance, and did such reliance occur? (3) Must the promise be enforced to prevent injustice?" *Hous. & Redevelopment Auth. of Chisholm v. Norman*, 696 N.W.2d 329, 336 (Minn. 2005). In Minnesota, as in Texas, "promissory estoppel applies only to agreements implied in law where no contract exists in fact." *Norman*, 696 N.W.2d at 337 (citing *Christensen v. Minneapolis Mun. Emps. Ret. Bd.*, 331 N.W.2d 740, 748 (Minn. 1983).

Corval reasonably may be understood to allege that Tesoro made promises independent of the Agreements. Corval alleges that "Tesoro made clear and definite promises that it would pay Corval for its work at the Mandan Refinery if Corval continued to perform the base scope of work and additional work directed by Tesoro to be performed by Corval[.]" Am. Compl. ¶ 189. It is true, as Tesoro points out, that the Agreements establish terms under which Corval was to perform its work and Tesoro was to pay Corval for its work, but Corval's promissory-estoppel allegations do not reference the Agreements. It seems reasonable, then, to understand Corval to be alleging the existence of promises that were made outside of the Agreements or that are binding even if they cannot be enforced under the Agreement. Regardless, the Federal Rules of Civil Procedure permit a pleader to "state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). It is not, therefore, improper for Corval to seek recovery for the same wrong under both claims for breach of contract and promissory estoppel. Depending on what discovery turns up and how the case proceeds, Corval's promissory-estoppel claim may survive where its breach-of-contract claim does not.

## C

Tesoro argues that Corval has failed to plead a fraud claim upon which relief may be granted. For its fraud claim, Corval alleges essentially that Tesoro, without telling Corval, decided "[o]n or about January [16 or] 17, 2019 . . . to stop processing and paying all presently pending and future Corval invoices" but nonetheless continued directing Corval to perform work. Am. Compl. ¶¶ 169–170; *see also* ¶ 150. The parties agree that Texas law governs Corval's fraudulent inducement claim. Mem. in Supp. at 6–9; Mem. in

Opp'n at 13–14, 24–27. Under Texas law, depending on how one chooses to separate or combine the elements, a plaintiff must show "(1) the defendant made a material representation that was false; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and suffered injury as a result." *JP Morgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018); *see also Saenz v. Gomez*, 899 F.3d 384, 391 (5th Cir. 2018) (listing six elements for a fraud claim under Texas law, separating *Orca Assets*' element one into two elements, representation and falsity, and element four into two elements, reliance and damages).

## 1

Tesoro argues that the Parties' pre-existing contractual relationship precludes a fraudulent inducement claim. Tesoro asserts in its opening brief that "Corval cannot plausibly allege that Tesoro, in January 2019, fraudulently induced Corval to enter into the MSA in 2013 or any of the Refinery Contracts in 2018." Mem. in Supp. of Dismissal at 9. This misinterprets Corval's fraudulent inducement claim. Corval does not allege that Tesoro's conduct after on or about January 16 or 17, 2019, induced Corval to enter into the MSA; Corval alleges that Tesoro's conduct after mid-January 2019 fraudulently induced Corval to continue performing under the MSA after that. Essentially, Corval alleges a "string along fraud"—a type of fraudulent inducement claim recognized in Texas. *See Kajima Int'l, Inc. v. Formosa Plastics Corp., USA*, 15 S.W.3d 289 (Tex. App. 2000). In *Kajima*, the plaintiffs contracted with the defendants to perform construction work. *Id.* at

15

291.  The plaintiffs alleged that the defendants "engaged in a 'string along' fraud scheme in which [defendants] made repeated false promises to compensate Kajima for delays, disruptions, bid omissions, and additional costs in order to keep Kajima working."  *Id.*  Reversing the trial court, the Texas Court of Appeals determined that it was error to restrict a jury instruction on fraudulent inducement only to the question whether the plaintiff had initially entered into the contract as a result of the fraud.  *Id.* at 291–292.  The court held that:

> [W]hether we characterize the fraud in this case as fraudulent inducement to make an oral amendment to an existing contract, fraudulent inducement to enter into a new oral contract, fraudulent misrepresentation, *fraudulent inducement to continue performance*, or fraud in the performance, the essential requirement that a promise was made with no intention of performing when it was made has been established by some evidence.

*Id.* at 293 (emphasis added) (citing *Central Sav. & Loan Ass'n v. Stemmons Nw. Bank, N.A.*, 848 S.W.2d 232, 240 (Tex. App. 1992) for the proposition that "when a promise is made with purpose or intent to deceive another, and without intention of performing, there is actionable fraud" (citing *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986))).  "Texas law is clear that a promise of future performance is actionable as fraudulent inducement when it is 'made with the intention, design and purpose of deceiving and with no intention of performing the act.'"  *Ibe v. Jones*, 836 F.3d 516, 533 (5th Cir. 2016) (quoting *Spoljaric*, 708 S.W.2d at 434).

Here, Corval's allegations are slightly different from those in *Kajima*, but not meaningfully so.  Corval does not allege that Tesoro made promises to pay for "delays,

disruptions, bid omissions, and additional costs[.]" *Kajima*, 15 S.W.3d at 291. Rather, Corval alleges Tesoro knowingly made false promises that it would comply with contractual duties to pay Corval for work Corval was to perform in the future. Am. Compl. ¶¶ 170, 171. That is, Corval alleges Tesoro made a promise of future performance (payment on the contract), with the intention to deceive Corval into continuing to work, and Tesoro had no intention of paying. That suffices to plead a fraudulent inducement claim under Texas law. *See Ibe*, 836 F.3d at 533; *Kajima*, 15 S.W.3d at 293; *Spoljaric*, 708 S.W.2d at 434.

## 2

Alternatively, Tesoro argues that Corval's fraud claim fails because it has not been pleaded with the particularity required by Rule 9(b). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To satisfy the particularity requirement of Rule 9(b), the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006). "The claim must identify who, what, where, when, and how." *U.S. ex rel Costner v. United States*, 317 F.3d 883, 888 (8th Cir. 2003). While Rule 9(b) requires particularity in pleading, "a complaint need not be filled with precise detail[.]" *Moua v. Jani-King of Minn., Inc.*, 613 F. Supp. 2d 1103, 1110 (D. Minn. 2009). Rather, "Rule 9(b) is to be read in the context of the general principles of the Federal Rules, the purpose of which is to simplify pleading. Thus, the particularity required by Rule 9(b)

is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations." *Costner*, 317 F.3d at 888. Important here, "[t]he level of particularity required depends on the nature of a case," *E-Shops Corp. v. U.S. Bank Nat'l Ass'n*, 678 F.3d 659, 663 (8th Cir. 2012), and to determine whether a party has satisfied Rule 9(b), courts look to "the complexity or simplicity of the transaction or occurrence, the relationship of the parties and the determination of how much circumstantial detail is necessary to give notice to the adverse party and enable him to prepare a responsive pleading," *Payne v. United States*, 247 F.2d 481, 486 (8th Cir. 1957).

Corval adequately pleads its fraud claim, though this does seem like a close call. Corval identifies only Tesoro as the "who" behind the fraud. Am. Compl. ¶¶ 147, 150, 170, 171. Corval alleges "what" Tesoro said that was fraudulent: "Tesoro, in and in relation to various project meetings, made oral and written statements encouraging Corval to continue work in progress," *Id.* ¶ 170, "when Tesoro had no present intention to pay Corval for work performed," *Id.* ¶ 171. Corval identifies the "when" with some precision, alleging that the fraud began "[o]n or about January [16 or] 17, 2019," *Id.* ¶¶ 169, 170, and running "through March 2019," *Id.* ¶ 150. Many paragraphs of Corval's Amended Complaint make clear that the "where" of the fraud is at least centered in Mandan, North Dakota, though the Amended Complaint does not foreclose the idea that aspects of the fraud occurred in other places. Corval doesn't say explicitly "why" Tesoro perpetrated the alleged fraud, but, as with just about any fraud claim, Corval's allegations point inferentially to added profits. Corval's allegations regarding "how" the alleged fraud was perpetrated seem straightforward. Tesoro decided to stop paying Corval and strung Corval along, asking it

18

"in relation to various project meetings" orally and in writing to continue performing work without disclosing the decision to stop paying. *Id.* ¶ 170; *see id.* ¶¶ 146–150, 169 – 171.

Corval's allegations regarding the "who" and "what" of Tesoro's conduct may not be sufficient in every fraud case, but they are enough in this case. Courts in this district have recognized that in some circumstances a plaintiff may plead the "who" of a fraud claim by identifying the defendant business organization as the maker of false statements and that a plaintiff need not identify specific individuals who may have made false statements on the organization's behalf. *See, e.g.*, *In re Polaris Mktg., Sales Practices, and Prods. Liab. Litig.*, 364 F. Supp. 3d 976, 988 (D. Minn. 2019) ("[A] plaintiff need not identify precisely which employee used which words to sell an allegedly defective product."); *Blue Cross & Blue Shield of Minn. v. Wells Fargo Bank, N.A.*, Civ. No. 11-2529 (DWF/JJG), 2012 WL 1343147 at *4 (D. Minn. Apr. 18, 2012) (recognizing that a party need not allege with "surgical precision" which specific individual made a misrepresentation); *McGregor v. Uponor, Inc.*, Civ. No. 09-1136 (ADM/JJK), 2010 WL 55985 at *4 (D. Minn. Jan. 4, 2010) (finding that plaintiffs satisfied the "who" requirement by alleging the defendants, an entity, made the false statements); *Kinetic Co. v. Medtronic, Inc.*, 672 F. Supp. 2d 933, 945 (D. Minn. 2009) (determining the plaintiff met the Rule 9(b) burden even though "the complaint [did] not identify precisely which Medtronic employee used which words to sell the particular device . . . or precisely which representations were made"). As with the "who" element, courts in this District have not required some fraud plaintiffs to allege "what" statements are fraudulent with exact specificity. *See, e.g.*, *Blue Cross & Blue Shield of Minn.*, 2012 WL 1343147 at *4. So long as the context is described

sufficiently, the complaint need not "identify precisely which . . . employee used which words . . . or precisely which representations were made." *Kinetic*, 672 F. Supp. 2d at 945. It makes sense to apply these rules here. The theory underlying Corval's fraud claim is that everything Tesoro communicated to Corval after about January 16 or 17, 2019, regarding Corval's ongoing work was fraudulent because Tesoro knew—but did not disclose to Corval—that it would not pay for the work. Am. Compl. ¶¶ 169–171. In this "all-or-nothing" two-party commercial fraud claim, identifying representative individual sources and examples of Tesoro's communications concerning that subject would add no meaningful detail to Corval's claims; it would place Tesoro in no better position to answer the claims.

Corval's allegations concerning when, where, and how Tesoro perpetrated the fraud also are sufficiently particular. Though a plaintiff need not allege specific times or dates to allege fraud with particularity, *see*, *e.g.*, *In re Polaris*, 364 F. Supp. 3d at 988 ("[C]ourts in this District repeatedly have concluded that allegations of fraud need not identify dates precisely."); *Axcan Scandipharm, Inc. v. Ethex Corp.*, 585 F. Supp. 2d 1067, 1084 (D. Minn. 2007) (determining a complaint sufficiently alleged "when" by asserting the fraud was ongoing "since the late 1990's"); *Solvay Pharms., Inc. v. Glob. Pharms.*, 298 F. Supp. 2d 880, 885 (D. Minn. 2004) ("when" was satisfied by allegation that fraud was ongoing over several years), Corval does. It identifies a precise time period running from about January 17, 2019 through March 2019. Am. Compl. ¶¶ 169, 150. Corval alleges the "where" of the fraud in two senses of that word. It makes clear that the fraud was centered around work in Mandan, and it alleges that fraudulent statements were made "in various

project meetings" and work orders. Am. Compl. ¶ 147. The string-along nature of Corval's claim is pleaded clearly and adequately describes the "how." Therefore, Tesoro's motion to dismiss Corval's fraud claim for failure to comply with Rule 9(b) will be denied.

## ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Defendant's Motion to Transfer Venue [ECF No. 23] is **DENIED**.

2. Defendant's Motion to Dismiss [ECF No. 15] is **DENIED**.

Dated: October 17, 2019        s/ Eric C. Tostrud
                                     Eric C. Tostrud
                                     United States District Court